At all. At this time, would counsel to the appellant please come to the podium and introduce himself on the record. Good morning, your honors, and may it please the court. My name is Raven Moslinger. I represent the appellant, Jocelyn Darden. May I reserve two minutes for rebuttal? Thank you. I'm going to focus today's argument on the summary judgment decision as to the WAIJAC claim and the FLSA claim. First, as to the WAIJAC, the Massachusetts WAIJAC requires employers to pay employees their wages on time and in full, pursuant to strict timing provisions. Now, the WAIJAC doesn't tell employers how much to pay employees. It primarily tells them when to pay them. To get to the amount that employers are required to pay under the WAIJAC, you primarily look at the private wage agreements entered into between the employer and the employee. So for example, $50 an hour or $1,000 a week. And then in turn, if the employer breaches that agreement by failing to pay on time or in full, they're in violation of the WAIJAC. Now, the plaintiff here, Ms. Darden, was a cashier who entered into a very simple wage agreement with her employer, approximately $20 an hour for each hour that she worked for the company. It's the kind of wage agreement that our employees across the country enter into, and it only means one thing. You work an hour, you get paid for an hour. You work for half an hour, you get paid for half an hour. But the record here reflects that Ms. Darden was not paid for 12 hours of time, indisputably. And the reason she wasn't paid for that is that without her knowledge, without her agreement, without any communication whatsoever, the defendants had implemented a time rounding practice by which they rounded her work time to the nearest 15 minutes, and ultimately to her detriment, such that she lost 12 plus hours of work time. The defendants themselves conceded at their 36th deposition that Ms. Darden, there is a small amount owed to Ms. Darden as a result of this time rounding practice. Now, if we were to stop there, there would indisputably be a violation of the Massachusetts WAIJAC. You have an employer who failed to pay an employee for more than 12 hours of work that she performed and which they don't dispute that she performed. That notwithstanding, the trial court entered summary judgment in favor of the defendants on the WAIJAC claim on grounds that the time rounding practice that the defendants had implemented complied with time rounding regulations that are promulgated under a completely different statute, and that being the minimum. Counsel, because the application of the regulation is so critical to the case here, I'm just wondering if it would be helpful from your perspective, your argument is the regulation doesn't apply to WAIJAC claims. In what circumstances then would it apply in Massachusetts? When an employee was invoking the minimum fair wage law, which would be minimum wage or overtime. The minimum wage laws set a floor. You must be paid $15 an hour. Now, the regulations set up a regime by which an employer, an employee in court can determine what is an hour of work, what compensation counts towards minimum wage and overtime. So the only time that the regulations are coming to play is when there is a minimum wage claim or an overtime claim asserted. In fact, the regulations themselves indicate that they're promulgated pursuant to Chapter 151, 151 being the minimum wage claim. But does it happen with regularity that somebody who's seeking to get wages that they weren't paid would only invoke that statute and not the WAIJAC? If you can help me understand, wouldn't automatically the WAIJAC implicated as well, and so a lawyer would want to bring both claims? Absolutely. So the WAIJAC, again, it doesn't say how much employers were required to pay. The wage obligations actually flow externally. They come from private wage agreements and they come from statutes. So for example, if an employer fails to pay the minimum wage, you can bring a claim under the minimum wage law, but you could also bring a claim for failing to timely pay those minimum wages under the WAIJAC. Same with respect to the civil service statute, the overtime statute, et cetera. So those- Different damages each time. Different damages each time. And so that's when a lawyer would bring a claim under both statutes and say, you didn't pay me the minimum wage, you also failed to pay me that on time, could you recover twice? Probably not. But they serve two different obligations. Is the theory that the rounding allowance, or the allowance to round, makes sense in the minimum wage context because effectively it's almost like an off-the-contract claim, and so we needed to have some rule about what it's going to be, so they had a default, well, you can round because we don't know what the terms would be. Exactly. And then when we do WAIJAC, since you have an agreement, why would we allow rounding? The agreement's the agreement. Is that the basic idea? Exactly.  And then, but now help me with overtime. Overtime, the same issue. So- Why? Is that overtime is not, or is that the idea that's off the contract, too? Well, it's, the minimum wage is sort of, yes, it's off the contract. Overtime is just a special premium that the legislature has decided should be paid to employers and employees. So it's sort of the same logic there, but we're going to have a rounding for that premium. Absolutely.  And you've got to sort of think- So the idea, but there's just no logic to having rounding for the timing point in the WAIJAC itself. Correct. Because it's a private wage agreement entered into between the employer and employee, whereas- Okay. What if the answer to that is, okay, but this seems novel. You would, I can't find, is there a lot of cases? There are not. There would have been a lot of water over the bridge before somebody discovered this point. And one answer is, well, maybe a default or implied term or understanding of the agreements was against the background of this rounding authority under the wage. So if you contracted around it, that's one thing. But in the absence of that, why wouldn't we just read that as sort of the understanding of these private agreements? And so that's read into the WAIJAC. That's a part of what their argument is. I believe that is part of what they're arguing. The reason I don't think there are many cases like this is because this is a very antiquated practice. This was first a regulation that emanated under the EFLSA back in the 1940s, back when the timekeeping practices were a little less advanced than they are today. Most employers, from my personal practice, don't employ these sorts of practices. But the issue, Your Honor, is that the WAIJAC requires the employer to pay as they promised. They cannot post facto sort of introduce, without any communication whatsoever with the employee, some different wage agreement or wage provision. And the SJC has stressed the importance of employers, in this context, being upfront with their communications about how employees are going to be compensated, and has highlighted the fact that, like with any contract, if you don't articulate a particular provision, it's not part of the agreement, and you can't invoke it. So I'll go back sort of to the... If you're right, what's the unit of measurement? One hour is one hour. Half an hour is half an hour.  Pardon? To the second? Sure. Absolutely. So I don't know of any other way that language can be interpreted. If someone says, I'm going to pay you $20 an hour for all hours worked, at the end of the week, you're not expecting to work an hour and get paid for 55 minutes. You're expected to get paid for an hour. That is just the plain meaning of what all hours worked means. So I do want to highlight that our concern here is that the fundamental error was that the regulation should have never been applied to Ms. Stargan's Wage Act claim in the first place. The time-rounding regulations, these regulations are explicitly promulgated by the Department of Labor Standards under Chapter 151, which is the Minimum Fair Wage Law. The regulations are not promulgated under the Wage Act, which falls under Chapter 149. In fact, the Department of Labor Standards is not even empowered to issue regulations that... Or to enforce the Wage Act. The only agency that has any authority to enforce the Wage Act in Massachusetts is the Attorney General's Office. And the Attorney General's views on the Wage Act are entitled to substantial deference. And in this case... Doesn't the Attorney General want us to certify this question? She does. But you don't want to give her that much deference. Well, Your Honor, we're okay with certification. I think it's a state law question. It's an issue of first impression. A lot of times I think this Court defers to the SJC when it comes to those sorts of issues. So we're in agreement with that. That would be perfectly fine from our end. But I do want to highlight the ways in which the Attorney General has stayed in opinion with respect to what the District Court did here. The Attorney General is indicating in her amicus brief that the regulations at issue here don't apply to the Wage Act. The DLS, the Department of Labor Standards, has no authority to apply... To promulgate regulations that apply to the Wage Act. And also... And I want to highlight this. The Attorney General, in her amicus brief, indicates that the trial court erred in relying on time-rounding authority to dismiss Ms. Darden's Wage Act claim. In part because those time-rounding regulations are inherently inconsistent with the Massachusetts Wage Act's timing provisions. The Wage Act requires wages to be paid to most employees weekly or bi-weekly within six or seven days of the end of the corresponding pay period. Whereas these timing regulations permit employees... Employers to withhold wages for potentially years. It just says it needs to be paid over a reasonable period of time. And so those two things are inherently inconsistent. And that's precisely why the AG indicated that relying on time-rounding authority to dismiss Ms. Darden's Wage Act claim was error. Counsel, I'm just trying to understand the implications of the Wage Act analysis for all of the various claims that you have. So, do you agree that all of your claims other than the FLSA claim would really depend on how we or the SJC interprets whether the regulation applies to the Wage Act claim? In other words, do you think the breach of contract claim really stands in its own? Or does it sort of rise and fall? I think it rises and falls. I think that the Wage Act is essentially permits for super-contractual enforcement. It's a way in which it enhances the rights of employees to enforce their wage agreements with their employers. So I think they do rise and fall largely together. I will note that the SJC hasn't necessarily adopted sort of contract formation principles and imported them into the Wage Act. The closest the SJC has gotten is to emphasize the importance of upfront communications about how employees are being compensated. So, I have bottomed you on there before I briefly move on to the FLSA claim. You have a wage agreement here that's $20 for hours worked. The only thing that means is you work an hour, you get paid for $20 for that hour. The defendants breached that agreement by failing to pay for at least 12 hours of misdemeanors work, indisputably. So the district court erred in entering summary judgment on the Wage Act claim and it should be reversed. As to the FLSA claim, briefly, we've asserted a claim under the FLSA for unpaid overtime. The FLSA does permit time rounding, so long as the time rounding is neutral in its application. But very importantly, the regulation provides, and I'm paraphrasing, that the rounding must average out so that employees are paid in full over a reasonable period of time. So if you look at, I don't think courts have been uniform in the way they've applied this regulation, but they kind of fall into two camps. Courts have approved time rounding where after application of the time rounding, the employees sort of come close to breaking even. So in the Boone case from the Eastern District of New York, the employees on average lost 15.6 seconds per shift. So they were pretty close to breaking even. The idea there with this time rounding is that, well, we took a snapshot right now, but maybe in a couple more pay periods, that 15.67 seconds is going to lead to you breaking even in a week in which you're getting, you know, rounding is happening favorably for you. And so where it's close, the courts have approved it. On the flip side, where the courts have not approved time rounding, where there is evidence of widespread undercompensation, an example of that is the Eddings case from the Central District of California, where 40% of employees were undercompensated. The facts of this case are almost identical to those. You have 46% of the employees of the defendants who were undercompensated. And I'm out of time. If I could just very quickly finish my final point. So here, the employees of the defendants were not close to breaking even. And I want to highlight that they will never break even because the defendants seized the time rounding practice in July of 2023. So unless they get relief in this lawsuit, they will forever lose the more than 788 hours of time that they clocked in, that they worked, and they weren't compensated for. And you're not disputing, then, that for purposes of assessing this rounding thing, we look at the employees as a whole as opposed to each specific employee? So I'm not disputing that. That's the way courts have interpreted it. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Appellees please introduce themselves on the record? Good morning, Your Honors, and may it please the Court, Michael Chittick on behalf of the Appellees. The Court should affirm the District Court's judgment for three reasons. The District Court properly determined that time clock rounding is permissible under both Massachusetts and federal law, provided that the employer's rounding practice is neutral, both on its face and as applied. Here, based on the undisputed facts, Colbert's rounding practice clearly passed both neutrality tests. The District Court also correctly found that there is no conflict between the Massachusetts Rounding Regulation and the Massachusetts Wage Act, and the two laws may be read and applied harmoniously to give effect to each. Now, I say two laws because the Massachusetts Rounding Regulation under Massachusetts law has the force and effect of law, and is entitled to the same deference according to a statute. The Rounding Regulation provides simply a permissible method of determining how wages will be calculated and recorded. It has no impact, detrimental or otherwise, on the prompt and timely payment of wages guaranteed by the Wage Act. Counsel, can you explain more your basis for that position? Because I think as your opposing counsel has said, there does seem to be a conflict in terms of actually the timing of the payment. So the regulation talks about reasonable time period, whereas the Wage Act is very clear about when the wages have to be paid by, and they have to be paid by, you know, just six or seven days after a time period ends, which is not the same thing as a reasonable period. So why isn't that a conflict that makes it impossible to actually apply both the regulation and the very strict requirements of the Wage Act? Because pursuant to the Wage Act, pursuant to the Rounding Regulation, Your Honor, the rounded wages, provided they're averaged out over a period of time, is a permissible form of calculating those earned wages. The Wage Act provides for payment of earned wages within a six- to seven-day period. And as the district court found, and I quote, the regulation sets parameters by which an employer may calculate earned wages, rounding, and the Wage Act requires timely payment of those earned wages. I guess the struggle that I'm having is, you know, the regulation doesn't make clear that it's modifying what the term earned wages means in the Wage Act and opposing counsel says it couldn't have because it was promulgated under an entirely different statute and the agency actually doesn't even have the authority to enforce the Wage Act. So how should we think about those arguments? Well, the Rounding Regulation was promulgated by the Department of Labor Standards, pursuant ultimately to legislative authority, as all properly promulgated regulations are. And clearly the Department of Labor Standards and the Rounding Regulation and the Wage Act touch on a similar subject matter, which is the calculation and payment of wages. So in that context, the courts have been clear that the two laws must be read harmoniously, if possible, to give effect to each. Did one come before the other? I believe... The Wage Act was most recently amended, I believe, in 2009. Was the original Wage Act predated the Rounding Rule or not? I believe it did. So is your position that, put aside the Rounding Regulation for a second, is rounding permissible under the Wage Act itself or only because the regulation provides that it is allowed? The Wage Act itself doesn't address it. That's what I'm asking. Well, he says it does address it. He says you can't round. That's what he says. So what's your position? I'm trying to understand the structure. One possibility is that the Wage Act, whatever it did, it no longer does it because the regulation makes it clear rounding is permitted under that statute. Okay? I'm asking, put that aside for a second. What is your position as to what just the Wage Act itself provides for as to rounding? The Wage Act itself does not address rounding. Okay, and why doesn't it, given what your opponent says about the plain text of it, which says you have to pay for hours worked. So where do you get an idea that there's an allowance for rounding? The Wage Act doesn't... The Wage Act addresses the prompt and timely payment of wages. It does not prescribe any particular method as to how wages are to be determined. That's what the Rounding Regulation in part does. Okay, so if we thought you're right on that point, it's unclear what the Wage Act is saying as to determining what an earned hour is as opposed to just when you have to pay for those hours that were earned. If we thought you're right on that, that it's just unclear what the Wage Act means to be saying on that point as to rounding, and we agree with your opponent that the Rounding Regulation simply isn't speaking to the Wage Act because it's not... It's under a different chapter. It's not about the Wage Act. It was meant to be addressing the minimum wage and overtime provisions, not the Wage Act. What are we supposed to do? Well, Your Honor, so the Wage Act speaks in terms of timely payment of earned wages. Again, it doesn't say timely payment of every hour worked. It doesn't say that. So if it's just unclear on that point, what are we supposed to do? What do you recommend we do? If we agree with you about that, but we disagree with you that the Rounding Regulation applies to the Wage Act... Well, the Rounding Regulation does apply to... I asked you if we disagreed with you on that. What do you recommend we do? So we agree with you in half, but not in whole. What would you like us to do? So I'm not sure I'm understanding your question. We agree with you that the Wage Act doesn't speak to rounding. We agree with your opponent that the Rounding Regulation doesn't speak to the Wage Act. Well, the Rounding Regulation does. I would disagree with that. It does speak to the Wage Act. I want you to think beyond that. How should we interpret wages earned in the Wage Act? If we're just starting from a clean slate. You have to interpret wages earned with reference to other laws, including the Rounding Regulation and including other regulations that are promulgated by the Department of Labor Standards under the Minimum Fair Wage and Overtime Law. In fact, you know, the Attorney General has had enforcement authority over the Wage Act since 1993. So the Attorney General has had over 30 years to provide its own interpretive regulations if it's all fit. And it also has co-enforcement authority over the Minimum Fair Wage and Overtime Law. And it has not seen fit to seek to amend the regulations under the Minimum Fair Wage and Overtime Law, including the Rounding Regulation. Nor has it, you know, it hasn't scheduled any administrative rulemaking process. It hasn't allowed the legislature to, you know, for clarity on this point, um, about, you know, the point that Appellant's Counsel is trying to make, which is that, well, the Rounding Regulation simply doesn't apply. And I'd also like to say that this case originated with the plaintiff's complaint acknowledges, admits, that the Rounding Regulation applies and cites it, uh, repeatedly with authority that the Rounding is permissible in Massachusetts. It's only when, after discovery in this case, it became very clear that this, the Rounding practice by Colbia was clearly neutrally applied, um, and in fact to Colbia's judgment, because if you're looking at the employee class as a whole, Colbia overpaid approximately 500 hours of time to the, to the employee class as a whole, which, which is what you must do under, under the law, the well-settled precedent that it's out there. Are you saying the complaint does not allege a claim directly under the Wage Act, but only argues it that the Wage Act plus the Rounding error still results in them winning? Correct. That's, that's what the complaint alleges. This is a new, this is a new theory that the, the Appellant has you know, advanced, uh, you know, in response to our motion for summary judgment at the District Court, an oral argument and, in fact, in response to the District Judge's questions, acknowledged that it was a novel theory, um, and that if the Court were to rule in Appellant's favor and Plaintiff's favor that the Court would necessarily have to write new requirements into the Wage Act or ignore a law, the Rounding Regulation, that is a law. It's a force of fact, a law and the Court must try to harmonize it with the, the Wage Act, which is what the District Court did here, and it, it did here correctly. Let me ask you about the harmonizing point. As a practical matter, if the Wage Act precluded rounding, in other words, any rounding would subject the employer to liability under the Wage Act unless the rounding hit the penny, the non-rounding number, could an employer round without, in other words, could an employer say, well, but the in other words, if an employer wants to do what the FLSA allows, could they do it without running afoul of the Wage Act? If, if rounding is not permissible under the Wage Act, then no, not a Massachusetts employer, and under Appellant's theory, if if someone is shorted even one second, as the Appellant stated in, you know, the opening argument, then they have a, they have an action under the Massachusetts Wage Act claim. So something has to give here. Either the Wage Act needs to be interpreted and understood as allowing rounding, or else there is no rounding. Correct. Those are the only two ways to do it. And the District Court confronted with that question, correctly analyzed it, and seen that the rounding law, excuse me, the rounding law applies to the determination of how earned wages are calculated, and the Wage Act applies to the timely payment of those earned wages. And what's your position on whether we should present this tension and ask for its resolution to the SJC? This Court has has stated, in its own words, with monotonous regularity, that certification to the to the SJC is inappropriate if the course the State Courts would take is reasonably clear. And here I would submit that it's abundantly clear what the SJC would do. Here's what we have in this case. We have... Why wouldn't you be happy to have us send it over? Because it's unnecessary. It's stops this case in its tracks. It's time consuming, as this Court has noted in the past. And this Court is just as well equipped to resolve this issue as the SJC is. We have a statute here in the Wage Act. We have the rounding regulation, which has the force of effective law. It must be accorded the same deference as according to the Wage Act. And we have an extensive body of case law interpreting the almost identical FOSA rounding regulation with the FOSA. I think the point you made in response to Judge Chiara, that effectively you couldn't do rounding lawfully, even though the regulation contemplates lawful rounding, if the Wage Act were interpreted the way your opponent says. But Judge Rickleman asked you earlier to just address by what interpretive method do we take a regulation adopted pursuant to laws in a different chapter and conclude that that regulation was intended to apply to the Wage Act? Or is the idea the Wage Act isn't subject to the regulation? It's just you should read into the Wage Act rounding being permissible. I'm just trying to figure out which position you're trying to ask us to take. The last point you made, Your Honor, you should read into the Wage Act rounding being permissible because that's the textually you think it's ambiguous as to whether it is or isn't. But we should assume that it is permissible since it doesn't foreclose it because otherwise we create a conflict with this other regime. Correct, and the rounding regulation is very clear on its face and really what specific agency promulgated a regulation that has the force and effect of the law is really a red herring. This Court and the SJC or whatever viewing court that there would be has an obligation to apply all laws that touch on a subject matter. But you're not really asking us to apply the rounding regulation to the Wage Act. I'm asking you to read the rounding regulation in harmony with the Wage Act. I'm out of time. Thank you. Thank you, Counsel. At this time, would the appellant please reintroduce himself on the record. He has a two-minute revolve. Thank you. Raven Moslinger again for the appellant. First, I want to address the idea that this is some sort of new argument. Our complaint alleges a Wage Act violation. It also indicates a violation of the rounding regulation. But that's what you're allowed to do at the pleading stage is make alternative arguments. The district court addressed the argument. It didn't find that you had waived it, right? Correct. And I would like to note in their opening brief at summary judgment, they actually preemptively addressed our argument. So the idea that this was some sort of surprise is just not accurate. Number two, the rounding regulation, a regulation promulgated under one statute cannot be just imported wholesale into some other statute. I think that's the argument. Well, I suppose the argument is you can read in this one particular regulation into the words wages earned. But there's no authority for that. There's no legal principle by which I think you could deduce that. Two statutes are, if not exactly overlapping, are certainly adjacent in the same area in terms of paying wages to employees. And if there's any ambiguity in either one of them, wouldn't it be appropriate to interpret them so that they coexist and interpretation of one doesn't wipe out the other? I think you would have to face that issue if we were pressing a minimum wage claim, but we are not. We are pressing a wage at claim where the source of the wage obligation came from a private agreement. Ms. Darden can't invoke the minimum wage law for $20 an hour because the minimum wage law only provides for $15 an hour. But if we're interpreting I believe the phrase in the statute is wages earned, right? So the question is we have to figure out what that means and we have to use the normal rules of statutory construction under Massachusetts law, etc. So why is it unreasonable, as opposing counsel has argued, that in just trying to analyze what that phrase means we would try to avoid a construction of it that's inconsistent with the regulation? Because there wouldn't have to be a construction that's inconsistent with the regulation if the regulation just didn't apply in the first place. Moreover, it's not saying that it applies. It's just saying we have to construe a phrase. We're trying to understand all the relevant pieces of data in doing that statutory construction. We're not saying it applies directly. We're just looking at the fact that it exists. Well, what matters is what the employer and the employee agreed upon. Judge Kavanaugh just asked you earlier. He said that the minimum wage and overtime law contemplates rounding. You don't disagree? I don't disagree, no. Your interpretation of the Wage Act would always make it illegal to do the rounding contemplated? Not necessarily. In any case in which rounding is contemplated as being subject to regulation under the overtime or minimum wage laws, you would say there would be a valid Wage Act claim if they did the rounding, right? Yes. If there was a minimum wage and an overtime claim asserted and you were channeling that through the Wage Act, then yes, there would be a conflict that would have to be addressed. But here, where there is a private agreement that issued the regulation in the fact that they agreed for a wage rate that was above the minimum wage and they agreed to pay for all hours of work as opposed to rounded hours, the private agreement governs. And I would also note there are three options under the rounding regulation. You could round to five minutes, you can round to six minutes, you can round to 15 minutes. What are we incorporating into the Wage Act? To Judge Rickleman's point, the phrase wages earned can't mean some things under the Wage Act when people also have a minimum wage claim and other things under the Wage Act when they don't. Well, that would mean the same thing all the time. Well, no, because as the SEC has made clear, whatever wage obligation you're seeking to press, statutory wage obligation can flow through the Wage Act. So too can a private wage agreement flow through the Wage Act. So it can mean different things. So, for example, the civil service statute, the SEC has said it doesn't provide for when civil service payments are due under the civil service statute, but the SEC said, oh, you can enforce that under the Wage Act and say, well, I wasn't paid my civil service payments within six or seven days of the pay period in which I earned those civil service payments. So yes, it can mean different things. But just very practically, folks who are being paid the minimum wage, the Wage Act should also be applying to them, correct? Yes. So this goes back to my original question that I think I asked you. I'm just struggling with the practical implications of that because what you're then saying is people who are earning minimum wage and are being paid based on a rounding system, that payment structure is violating the Wage Act, which also applies to those employees. I believe so. But it's solely in the context of a minimum wage claim. Because that's... If it's rounding, there's going to be someone who doesn't get paid for all their hours during some period of time. Not necessarily. So, I mean, most courts, the way they interpret the minimum wage laws is they look at a work-week-by-work-week basis. So long as the total compensation over the course of the hour's work What's our baseline? You're saying the baseline is the Wage Act. That's just the rule, you've got to comply with the Wage Act. When you're dealing with minimum wage and overtime law, you get some special benefits that aren't Wage Act claims, but then it's subject to this rounding limitation. That's how you see the world. Yes, so with respect to compliance with the minimum wage and overtime law. You have a stake to say that because they contemplated rounding in that arena that tells us anything about whether there's rounding allowed for the Wage Act. No, and I will note that the Wage Act, in fact, was passed before the minimum wage law and well before the overtime law. Thank you. Thank you, Your Honor.